# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### CENTRAL DIVISION

MICHAEL F. MARNACH,

      Plaintiff,

vs.

JO ANNE B. BARNHART,
Commissioner of Social
Security,

      Defendant

**No. 05-CV-3058**

**ORDER**

_____

    This case involves an application for disability benefits (SSD) under Title II of the Act, 42 U.S.C. §401 et seq. and an application for supplemental security income benefits (SSI) based on disability under Title XVI of the Act, 42 U.S.C. §§1381 et seq. Plaintiff, Michael Marnach, (hereinafter "Marnach"), filed this action requesting reversal of the Commissioner's decision that he is not disabled. After careful consideration of the parties' written and oral arguments, the Court reverses the decision of the Administrative Law Judge (hereinafter "ALJ") and awards benefits as of October 13, 2004.

## I.   INTRODUCTION

    Michael Marnach ("Marnach") applied for disability benefits ("SSD") under Title II of the Act, 42 U.S.C. §401 et

seq. and supplemental security income benefits ("SSI") under Title XVI of the Act, 42 U.S.C. §§1381 et seq.  Tr. 76-78, 575-78.  Marnach's alleged disability onset date is April 2, 1999.  Tr 76, 575.

This is not Marnach's first application for disability.[1] The Commissioner states in a footnote that the Social Security Act does not authorize judicial review of the Commissioner applying *res judicata* or refusing to reopen a prior claim; however, the Commissioner did not do that.  See Docket 13, at 3 n. 1.

Marnach's third application was denied initially and on reconsideration.  Tr. 54-56, 60-63, 579-83, 586-90.  A hearing was held before an ALJ on December 10, 2004.  The ALJ determined that Marnach was not "disabled" within the meaning of the Social Security Act.  Tr. 27.  The Appeals Council denied request for review, therefore, the ALJ's decision stands as the final decision of the Commissioner.

---

[1]     Marnach applied for disability benefits and supplemental security income benefits on July 12, 1999 and May 22, 2000.  Tr. 70-75, 554-56, 562-63.  The July 1999 application was denied initially and no further action was taken.  Tr. 35, 40-43, 556-60.  The May 2000 application was denied initially and on reconsideration.  Tr. 36-37, 44-47, 50-53, 564-73.

## II. BACKGROUND

Marnach was forty-three years old at the time of the administrative hearing. Tr. 594. Marnach has an eighth grade education, took a course at Iowa Central Community College to become a certified custodian, and has worked as a floor cleaner, commercial cleaner, janitorial supervisor, executive housekeeper, and a janitor. Marnach alleges disability due to degenerative disk disease and problems with his back, legs, and neck. Tr. 152. Marnach also has a history of depression, headaches, and anger outbursts.

On April 26, 1993, Marnach had an MRI[2] of his back. Tr. 207. The MRI revealed degenerative disc disease of all the lumbar discs, and the L2, L3, L4 and L5 discs with herniation of the nucleus of the L2 disc centrally, and herniation of the L5 disc centrally into the right lateral recess with nerve root compression on the right side. Id.

On May 6, 1993, Marnach had a myelogram[3] of the lumbar area of his back. Tr. 208-09. The myelogram indicated abnormal swelling of the nerve root at L5 on the right side,

_____

[2] Magnetic resonance imaging

[3] A radiograph of the spinal cord.

3

herniation of the L5, and degenerative disc disease at L2, L3, L4, and L5.  Id.

On February 11, 1996, Marnach went to the emergency room ("ER") due to back pain after lifting a heavy load at work. Tr. 216.  An X-ray of his back indicated mild spondylosis[4] and no other significant change from the April 26, 1993 examination.  Tr. 217.

Marnach also went to the ER in November of 1996 due to back pain.  Tr. 219-20.  Dr. John Koester recommended that Marnach avoid prolonged sitting or standing and not to go back to work until a follow up visit.  Tr. 220.  On February 17, 1997, Marnach went to the ER because of increasing back pain. Tr. 222.  Marnach was given some medications and sent home. Id.

Marnach also had an MRI done on March 12, 1997.  Tr. 231. The MRI indicated degenerative lumbar discs from L-2 to L5, mild disc herniation at L-2, moderate disc herniation at L-3, and central disc herniation at L-4.  Id.  In April of 1997,

---

[4]   Degenerative spinal changes due to osteoarthritis, i.e., the most common form of arthritis. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1743 (30th ed. 2003).

Marnach went to the ER with back pain after attempting to move a dresser.  Tr. 230.  Marnach was given medication and sent home.  Marnach was scheduled for an epidural[5] steroid injection in May of 1997.  Tr. 225.

On August 16, 1997, Marnach again reported to the ER due to back pain after moving a washing machine.  Tr. 253.  Again, he was given medication and sent home.  Marnach also went to the ER due to back pain in August and October of 1998, October and December of 1999, and January and June of  2000.  Tr. 255, 257, 261-62, 268, 274, 276, 282.

A consultative exam was performed on Marnach by Dr. Subhash Sahai on June 19, 2000.  Tr. 294-95.  Dr. Sahai noted that Marnach's back range of motion is "rather limited in all directions" and the only objective findings of back pain is Marnach's restricted range of motion of his back.  Tr. 295.

On August 16, 2001, an X-ray of Marnach's back indicated "[c]hange of degenerative disc disease from L3 to S1 with slight progression from 1996."  Tr. 302.  As set out on page 22 of this Order, on December 24, 2002, Dr. James Steele, Marnach's family physician, indicated that Marnach has a

_____

[5]  Space around the spine.

lengthy history of back problems and is "disabled" from these problems. Tr. 344.

On January 21, 2003, an MRI of Marnach's back indicated a herniation at the L2, L3, and L4 lumbar discs, a bulging at the L5 disc, and moderately severe osteoarthritis changes of the L5-S1 facet joint. Tr. 338. An x-ray revealed mild changes of degenerative disc disease from L3 to S1. Tr. 337. Dr. Mark Palit recommended that Marnach does not have an operation, but that he continue with chronic pain management. Tr. 335.

Marnach began seeing Dr. Ed. DeHaan for chronic pain management in February of 2003. Tr. 334. Dr. DeHaan noted that Marnach is currently taking Vicodin[6] and prescribed him

---

[6] "[T]rademark for combination preparation of hydrocodone bitartrate", which is derived from codeine, but having more powerful sedative and analgesic effects." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 2039, 871 (30th ed. 2003).

Flexeril[7] and Oxy-Contin[8].  <u>Id</u>.  In a letter dated April 4,

2003, Dr. DeHaan opined that Marnach has "significant

occupational limitations" and is capable of working only 20

hours per week, which should be light, with minimal lifting,

and able to alternatively sit, stand, and move around.  Tr.

409.  On May 27, 2004, Marnach was referred to nurse

practitioner Julie Schneider for a mental evaluation.  Tr.

512.  Julie Schneider diagnosed Marnach with major depressive

disorder and assessed Marnach a Global Assessment of

Functioning ("GAF")[9] score of 50[10].  The record indicates that

Marnach attended these sessions with Ms. Schneider until

October 22, 2004.  Tr. 499-512.  Ms. Schneider noted on

---

[7]    "[T]rademark for preparation of cyclobenzaprine
hydrochloride", which is used as a skeletal muscle relaxant
for relief of painful muscle spasms.  DORLAND'S ILLUSTRATED MEDICAL
DICTIONARY 710, 459 (30th ed. 2003).

[8]    "[T]rademark for a preparation of oxycodone
hyrdrochloride", which is derived from morphine.  DORLAND'S
ILLUSTRATED MEDICAL DICTIONARY 1344 (30th ed. 2003).

[9] GAF score is used by psychologists and psychiatrists to
measure a person's functioning at the time of the session.

[10]   A GAF score of 50 indicates "serious symptoms" and
"[a]ny serious impairment in social, occupational, or school
functioning."

several occasions that Marnach continued to have mood swings, which were mostly irritable and angry.  Id.

On June 18, 2004, Dr. Abhay Anand, Marnach's new treating physician because Dr. Steele left the doctor's office, conducted a physical examination of Marnach.  Tr. 413-15. Marnach rated his back pain as a 4-7 out of a 10 point scale. Tr. 413.  Dr. Anand noted that Marnach has "mild to marked degenerative disc disease", tenderness at L4-5 and L5-S1, and decreased range of lumbosacral spine flexion.  Tr. 414.  Dr. Anand also noted that Marnach was to return in four weeks for a lumbar epidural[11] steroid injection.  Id.

On September 17, 2004, Dr. Anand started Marnach on a Fentanyl[12] patch 25 mcg, which should be replaced every 72 hours, continued to keep Marnach on Oxycodone for breakthrough pain and Amitriptyline[13] and Flexeril for spasms.  Tr. 472.

By October 13, Marnach reported that the Fentanyl patch was only partially working.  Tr. 488.  Dr. Anand doubled the amount of Fentanyl prescribed to Marnach and started him on

---

[11]  See supra n. 5.

[12]  Used to relieve chronic severe pain.

[13]  Used in the treatment of chronic pain.

8

Zanaflex[14] and took him off the Flexeril.  Tr. 489.

On October 24, 2004, Marnach reported to the ER due to increased back pain after running out of his current medications a few days earlier.  Tr. 515.  Three days later, Marnach had another X-ray and an MRI taken.  Tr. 523-25.  The X-ray revealed degenerative disc and arthritic changes, that had not significantly progressed since January 21, 2003.  Tr. 523.  The MRI indicated disc protrusions at L2-3, L3-4, L4-5, and L5-S1.  Tr. 524.  On October 29, 2004, Marnach received a lumbar epidural steroid injection, and Dr. Anand increased his Fentanyl patch another 25 mcg. to a total of 75 mcg. every 72 hours.  Tr. 533.

## III.     ADMINISTRATIVE LAW HEARING

Marnach testified that his back keeps him from working. Tr. 600.  Marnach stated that he has trouble walking, his legs go numb after sitting for a long time, can't stand for too long, can't bend over, and has to be careful with everything he does.  Id.  Marnach testified that his chiropractor

---

[14]    "[T]rademark for a preparation of tizanidine hydrochloride", which is a short-acting agent to manage the increased muscle tone associated with spasticity.  DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 2074, 1916 (30th ed. 2003).

restricted Marnach from lifting over ten pounds.  Tr. 601.

Marnach testified that when he gets these back pains, the pain will sometimes move down his legs and it feels like someone stuck a knife in his legs.  Tr. 602.  Marnach stated that he can only walk a block or two.  Tr. 603-04.  Marnach indicated that if he walked too much longer, his feet, legs and lower back start to tighten up and throb like a toothache. Tr. 604.

Next, Marnach stated that he can only sit for 15-20 minutes.  Tr. 605.  After 15-20 of sitting, Marnach said that his back starts bothering him and he has pains down his legs. Marnach testified that he could stand for 20-30 minutes if he had to push himself.  Tr. 606.  After standing for 20-30 minutes, Marnach said his legs get weak, like rubber, and they start hurting.  Id.

Marnach said that if he stood or sat for too long in an eight-hour day, he would have to lay down for awhile.  Id. Marnach stated that he takes daily naps.  Id.

Marnach testified that he was an alcoholic, but does not drink anymore.  Tr. 616.  Marnach also stated that he lives with his wife and six children, i.e., two of his own and four

of his wife's children from a previous relationship.  Tr. 618.

Lastly, the vocational expert ("VE"), Carma Mitchell, testified.  Tr. 626.  The ALJ's first hypothetical question posed to the VE asked if the following individual can perform any jobs he has previously performed personally if he was:

> a 43-year-old, with an eighth grade
> education.  Basically, his primary
> complaint is back problems.  As Mr. Parker
> pointed out, he did have an MRI evaluation
> in October of '04, and that evaluation, at
> exhibit 52F, indicates a marked improvement
> in his condition.  In fact, when they
> compared this evaluation with the previous
> one, it says that the protrusion and
> extruded fragments have been markedly
> reduced in prominence, with considerably
> less impingement on the dural sac.  That
> does not take away from the fact that he
> does have back problems that he complains
> of.  Whether he has them to the degree he
> complains of does not appear to be
> supported by the record.  He complains,
> also, of migraine headaches.  The record is
> inconsistent in reporting such migraine
> headaches.  He indicated one every few
> weeks.  These headaches would not impact
> his ability to work.  He also admitted to
> being an alcoholic, and does have a long
> history of alcohol abuse.  He said that he
> also suffers from some depression, however,
> he was seen for this condition in May of
> '04 and it does not appear that the
> depression, in and of itself, is of such
> sufficient severity to interfere with his
> ability to function independently,
> appropriately, and effectively on a
> sustained basis in the competitive job

11

market. Would have only a mild impact on his ability to function. Physically, at age 43, he should be able to occasionally lift 20 lbs., frequently lift 10 lbs. Sit, stand, and walk with normal breaks in an eight-hour workday. Has an unlimited ability to push and pull. Occasional climbing, balancing, stooping, kneeling, crouching, and crawling. No manipulative, visual, communicative, or environmental limitations. The record indicates he smokes between two and three packs of cigarettes a day, so he wouldn't be precluded. If he can tolerate that much cigarette smoke, he shouldn't have any problem with any other environmental factors.

Tr. 626-27. The VE concluded that Marnach would be able to perform his previous job of an executive housekeeper, which is a skilled-light job. The VE also stated that there are other jobs that Marnach could perform like butler, which is semi-skilled, or in-home cleaning, which is low-level, semi-skilled. Tr. 627-28.

Next, the VE testified that Marnach would have transferrable skills to perform unskilled, light and sedentary work. Tr. 629. For example, Marnach could perform mail clerk, office machine operator, or marker jobs. Id.

Lastly, the attorney for the claimant asked the VE a hypothetical question in bits and fragments:

12

[could] an individual who is age 43, with
an eighth grade education and a past
relevant work summary as you've
prepared...with chronic low back pain as
his primary difficulty, migraine, alcohol
addiction, and depression as he described
it. The RFC coming from these disabilities
would be the ability to walk no more than
two blocks, to sit at one time up to 15 to
20 minutes. Stand at one time 20 to 30
minutes. And then to sit and stand and
walk, full, in an eight-hour day no more
than four hours at a time. In other words,
alternate sitting and standing four
hours...Lifting frequently 10 lbs.,
occasionally 20 lbs. No twisting,
stooping, crouching, climbing
ladders...occasionally climbing stairs,
limits with repetitive reaching, handling,
or fingering. Difficulties with
concentration, attention, and pace
secondary to pain. And anger
outbursts...[and] in the eight hour period
of time, he's going to have to take a
nap...of one hour [return to their past
relevant work?]

Tr. 630-32. The VE concluded that this individual would not

be able to return to his past relevant work, have no

transferrable skills, and could not perform any other job in

the national economy due to the napping requirement. Tr. 632-

33.

The claimant's attorney asked a second hypothetical which

took out the napping requirement, but added that the anger

outbursts occur once a month and consist of yelling at people

inappropriately. Tr. 633. The VE opined that due to these outburst, the individual would not be able to perform past work, or any other work, or have any transferrable skills. <u>Id</u>.

The claimant's third hypothetical removed the anger outbursts, and the VE concluded that there would be light work available for the individual.

**IV. ALJ'S DECISION**

The ALJ concluded that Marnach has not engaged in substantial gainful activity since April 2, 1999, which is his alleged disability onset date. Tr. 26. Next, the ALJ determined that Marnach has the following "severe" impairment of degenerative disc disease and the non-severe impairments of depression and headaches. <u>Id</u>.

The ALJ concluded that these impairments or a combination of these impairments did not meet or equal the level of severity required under the social security listings. <u>Id</u>. The ALJ determined that Marnach's allegations were not fully credible due to numerous inconsistencies in the record. <u>Id</u>.

The ALJ concluded that Marnach could perform his past relevant work as a courier, and has not acquired transferrable

skills for skilled or semi-skilled jobs. Id. The ALJ also concluded that based on the claimant's age, education, previous work experience, and residual functional capacity that there were significant jobs in the national economy that Marnach could perform. Tr. 27. Based on the foregoing, the ALJ concluded that Marnach was not disabled.

## V. DISCUSSION

This Court must determine whether the Commissioner's decision to deny disability benefits is "supported by substantial evidence on the record as a whole." Lorenzen v. Chater, 71 F.3d 316, 318 (8th Cir.1995).

### A. THE COURT'S JURISDICTIONAL BASIS

In Bowen v. Yuckert, 482 U.S. 137 (1987), the United States Supreme Court delineated the steps which precede a district court's review of a Social Security appeal:

> The initial disability determination is made by a state agency acting under the authority and supervision of the Secretary. 42 U.S.C. § 421(a), 1383b(a); 20 C.F.R. §§ 404.1503, 416.903 (1986). If the state agency denies the disability claim, the claimant may pursue a three-stage administrative review process. First, the determination is reconsidered de novo by the state agency. 20 C.F.R. §§ 404.909(a), 416.1409(a). Second, the claimant is entitled to a hearing before an

administrative law judge (ALJ) within the Bureau of Hearings and Appeals of the Social Security Administration. 42 U.S.C. §§ 405(b)(1), 1383(c)(1) (1982 ed. and Supp. III); 20 C.F.R. §§ 404.929, 416.1429, 422.201 et seq. (1986). Third, the claimant may seek review by the Appeals Council. 20 C.F.R. §§ 404.967 et seq., 416.1467 et seq. (1986). Once the claimant has exhausted these administrative remedies, he may seek review in federal district court. 42 U.S.C. §405(g).

Yuckert, 482 U.S. 137, 142, 107 S. Ct. 2287, 2291 96 L. Ed. 2d 119 (1987).

Section 1383(c)(3) of Title 42 of the United States Code provides, "The final determination of the Secretary after a hearing . . . shall be subject to judicial review as provided in section 405(g) of this title. . . ."  In pertinent part, 42 U.S.C. § 405(g) provides:

Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . .brought in the district court of the United States for the judicial district in which the plaintiff resides... The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by

16

> substantial evidence, shall be conclusive
> . . . . The judgment of the court shall be
> final except that it shall be subject to
> review in the same manner as a judgment in
> other civil actions . . . .

Accordingly, this Court may affirm, reverse or remand the ALJ's decision.

## B.  THE SUBSTANTIAL EVIDENCE STANDARD

The Eighth Circuit has made clear its standard of review in Social Security cases.   If supported by substantial evidence in the record as a whole, the Secretary's findings are conclusive and must be affirmed. <u>Grissom v. Barnhart</u>, 416 F.3d 834, 837 (8th Cir. 2005); <u>Smith v. Shalala</u>, 31 F.3d 715, 717 (8th Cir. 1994) (citing <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971); 42 U.S.C. § 405(g) (Supp. 1995)). "Substantial evidence 'is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion.'" <u>Maresh v. Barnhart</u>, 438 F.3d 897, 898 (8th Cir. 2006) (quoting <u>McKinney v. Apfel</u>, 228 F.3d 860, 863 (8th Cir. 2000)).   In the words of the Supreme Court, substantial evidence is "more than a mere scintilla.   It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

Richardson v. Perales, 402 U.S. 389, 401 (1971) (citing

Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).

The Eighth Circuit has taken pains to emphasize that,

"[a] notable difference exists between 'substantial evidence'

and 'substantial evidence on the record as a whole.'" Wilson

v. Sullivan, 886 F.2d 172, 175 (8th Cir. 1989) (quoting

Jackson v. Bowen, 873 F.2d 1111, 1113 (8th Cir. 1989)).

> "Substantial evidence" is merely such
> "relevant evidence that a reasonable mind
> might accept as adequate to support a
> conclusion." "Substantial evidence on the
> record as a whole," however, requires a
> more scrutinizing analysis.  In the review
> of an administrative decision, "[t]he
> substantiality of evidence must take into
> account whatever in the record fairly
> detracts from its weight."  Thus, the court
> must also take into consideration the
> weight of the evidence in the record and
> apply a balancing test to evidence which is
> contradictory.

Id.

The Court, however, does "'not re-weigh the evidence or

review the factual record de novo.'" Roe v. Chater, 92 F.3d

672, 675 (8th Cir. 1996) (quoting Naber v. Shalala, 22 F.3d

186, 188 (8th Cir. 1994)).  Likewise, it is not this Court's

task to review the evidence and make an independent decision.

Ostronski v. Chater, 94 F.3d 413, 416 (8th Cir. 1996) (citing

<u>Mapes v. Chater</u>, 82 F.3d 259, 262 (8th Cir. 1996)). "If, after review, [it is] possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [this Court] must affirm the denial of benefits." <u>Id</u>. Even in the case where this Court "might have decided the case differently", this Court cannot reverse if there is substantial evidence to support the Commissioner's decision. <u>Fredrickson v. Barnhart</u>, 359 F.3d 972, 976 (8th Cir. 2004) (citing <u>Krogmeier v. Barnhart</u>, 294 F.3d 1019, 1022 (8th Cir. 2002)).

The process, however, is not stacked in the Commissioner's favor because, "[t]he standard requires a scrutinizing analysis, not merely a 'rubber stamp' of the [Commissioner]'s action." <u>Cooper v. Secretary</u>, 919 F.2d 1317, 1320 (8th Cir. 1990) (citing <u>Thomas v. Sullivan</u>, 876 F.2d 666, 669 (8th Cir. 1989)). In cases where the Commissioner's position is not supported by substantial evidence in the record as a whole, the Court must reverse. <u>See</u> <u>Lannie v. Shalala</u>, 51 F.3d 160, 164 (8th Cir. 1995). "'[T]he goals of the Secretary and the advocates should be the same: that deserving claimants who apply for benefits receive justice.'"

<u>Battles v. Shalala</u>, 36 F.3d 43, 44 (8th Cir. 1994) (quoting
<u>Sears v. Bowen</u>, 840 F.2d 394, 402 (7th Cir. 1988)).

**C. DETERMINATION OF DISABILITY**

Social Security disability benefits may be awarded to
disabled individuals who meet certain income and resource
guidelines. 42 U.S.C.A. § 423 (d)(1)(A). In connection with
the award of such benefits to an adult:

> [A]n individual shall be considered to be
> disabled . . . if he is unable to engage in
> any substantial gainful activity by reason
> of any medically determinable physical or
> mental impairment which can be expected to
> result in death or which has lasted or can
> be expected to last for a continuous period
> of not less than twelve months.

42 U.S.C.A. § 423 (d)(1)(A).

An impairment will only be considered of such severity if
the individual is "not only unable to do his previous work but
cannot, considering his age, education, and work experience,
engage in any other kind of substantial gainful activity which
exists in the national economy. . . ." 42 U.S.C.A. § 423
(d)(2)(A).

Determination of a claimant's disability involves a five
step analysis. 20 C.F.R. § 404.1520 (a-f). In the first
step, the ALJ determines if the Claimant had engaged in past

substantial gainful activity. Next, the ALJ decides if the Claimant has an impairment. Third, the ALJ must look at the regulations to determine if the impairment meets or is medically or functionally equal to a Listing in Appendix 1, Subpart P of Regulation No. 4. Fourth, the ALJ assesses the Claimant's residual functional capacity (RFC), to see if the Claimant could perform his past relevant work. At the fifth and final step of the analysis, the Social Security Commission must prove that there are a significant number of jobs (other than his past relevant work) in the national economy that a person of the same age, education, past work experience, and physical and mental residual functional capacity can perform. 20 C.F.R. § 404.1520 (f).

To acquire Social Security disability benefits, initially the claimant has the burden of showing 'that [he] is unable to perform [his] past relevant work.'" Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001) (quoting Beckley v. Apfel, 152 F.3d 1056, 1059 (8th Cir. 1998)). This encompasses the first four steps of the analysis. "If the claimant carries [her] burden, 'the burden of proof then shifts to the Commissioner to demonstrate that the claimant retains the physical residual

functional capacity to perform a significant number of other jobs in the national economy that are consistent with the claimant's impairments and with vocational factors such as age, education, and work experience.'" Id. There must be some medical evidence to support the ALJ's determination of the claimant's residual functional capacity, and this evidence should address the claimant's ability to function in the workplace. Dykes v. Apfel, 223 F.3d 865, 867 (8th Cir. 2000) (per curiam); Nevland v. Apfel, 204 F.3d 853, 858 (8th Cir. 2000).

### D. STANDARD FOR REVIEWING THE ALJ'S DECISION

"Deference to the ALJ's credibility determination is warranted if the determination is supported by good reasons and substantial evidence." Tellez v. Barnhart, 403 F.3d 953, 957 (8th Cir. 2005). By that same token, the ALJ's credibility determination should not just be stated as a conclusion in the guise of findings, but should be closely and affirmatively linked to substantial evidence. Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995).

Additionally, the law in the Eighth Circuit is well settled that an ALJ may not discredit a claimant's subjective

complaints of pain, discomfort, or other disabling limitations simply because there is a *lack of objective evidence*. See Ramirez v. Barnhart, 292 F.3d 576, 581 (8th Cir. 2002) (noting that the ALJ may not discredit a claimant solely because the objective medical evidence does not fully support the claimant's subjective complaints of pain). Instead, the ALJ may only discredit the subjective complaints if they are inconsistent with the record as a whole. See Dixon v. Barnhart, 353 F.3d 602, 605 (8th Cir. 2003); see also Bishop v. Sullivan, 900 F.2d 1259, 1262 (8th Cir. 1990) (citing Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984)).

Under Polaski, the ALJ must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to: 1) the claimant's daily activities; 2) the duration, frequency and intensity of the pain; 3) precipitating and aggravating factors; 4) dosage, effectiveness and side effects of medication; and 5) functional restrictions. Polaski, 739 F.2d at 1322. When the ALJ considers all of the Polaski factors and still makes a

determination to reject a claimant's subjective complaints, the ALJ must give "good reasons" for discrediting the claimant's testimony. Hogan v. Apfel, 239 F.3d 958, 962 (8th Cir. 2001). If an ALJ discredits a claimant's testimony and gives good reasons for doing so, the ALJ's decision should normally receive deferential treatment. Id. (quoting Dixon v. Sullivan, 905 F.2d 237, 238 (8th Cir. 1990)).

"As is true in many disability cases, there is no doubt that the claimant is experiencing pain; the real issue is how severe that pain is." Thomas v. Sullivan, 928 F.2d 255, 259 (8th Cir. 1991). "It is well-settled 'that pain can cause disability within the meaning of the Social Security Act.'" Johnson v. Sec. of Health & Human Servs., 872 F.2d 810, 812 (8th Cir. 1989)(quoting Northcutt v. Califano, 581 F.2d 164, 166 (8th Cir. 1978)).

### E.   ANALYSIS OF THE ALJ'S DECISION

After careful review of the administrative record, this Court is persuaded that there is not substantial evidence to support the ALJ's decision that Marnach's back problems and resulting pain are not so severe as to be disabling and that Marnach could return to his past work as an executive

housekeeper[15], or other jobs in the national economy.

This Court is persuaded that the ALJ's <u>Polaski</u> analysis is unsupported by the record.

(A) Daily Activities:

The ALJ noted that Marnach's daily activities involved "his personal care, child care, some household chores, and driving the car and running errands."  This Court is persuaded that Marnach's *limited* ability to perform domestic activities provide little evidence that Marnach is capable of performing full time work.  A claimant does not need to establish that he is completely bedridden to be found disabled, but whether a claimant can "perform the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions

---

[15] This Court notes that in the ALJ's findings, the ALJ found that Marnach could return to his past relevant work as a "courier"; however, Marnach never worked as a "courier." The Claimant argued that this is reversible error.  However, after reading the opinion of the ALJ, this Court is persuaded that the ALJ simply made an error in inserting "courier", because the body of the opinion clearly indicated that the ALJ was finding that Marnach had past relevant work as an "executive housekeeper."  This Court concludes that this error by the ALJ is not fatal to the ALJ's decision.  <u>See</u> <u>Benskin v.</u> <u>Bowen</u>, 830 F.2d 878, 883 (8th Cir. 1987) ("An arguable deficiency in opinion-writing technique is not a sufficient reason for setting aside an administrative finding where...the deficiency probably had no practical effect on the outcome of the case.")

in which real people work in the real world." <u>McCoy v.</u>
<u>Schweiker</u>, 683 F.2d 1138, 1147 (8th Cir. 1982); <u>see</u> <u>also</u>
<u>Baumgarten v. Chater</u>, 75 F.3d 366, 369 (8th Cir. 1996)
(concluding that "[t]o establish disability, [a claimant] need
not prove that [his] pain precludes all productive activity
and confines [him] to life in front of the television.")

Although Marnach may perform simple activities around the
house on a daily basis, this Court is not persuaded that
Marnach can perform light or sedentary work on a continuous
basis throughout the working day.

(B) Duration, Frequency, and Intensity of Pain:

This Court cannot find any place that the ALJ referred to
this factor.  However, the record is replete with Marnach
making several trips to the emergency room due to unbearable
back pain.  The record is also filled with Marnach requesting
and receiving several medications to help with his pain.  This
Court is persuaded that this factor also supports Marnach's
allegations of disabling pain.

(C) Dosage, Effectiveness, and Side Effects of Medication

Marnach has tried several medications and treatments to
help alleviate his pain.  Marnach continuously had his pain

medications altered or increased, but the pain was never really controlled. For example, between September 17, 2004 to October 29, 2004, Marnach had his Fentanyl patch increased twice and also received a steroid injection to attempt to relieve his chronic pain.

Objective medical evidence relating to medications support Marnach's allegations of disabling pain.

(D) Functional Restrictions

Dr. DeHaan opined that Marnach has "significant occupational limitations" and is capable of working only 20 hours per week. Tr. 409. Dr. James Steele indicated that Marnach is "disabled" from his back problems. Tr. 344. The consultative examiner, Dr. Sahai, concluded that Marnach's back range of motion is "rather limited in all directions". Tr. 295. No doctors recommended surgery for Marnach's back problems.

The ALJ did not consider the restrictions placed on Marnach by Dr. DeHaan that limited Marnach to working half the day and alternating between sitting, standing, and moving around. Instead, the ALJ focuses on a MRI that indicated that Marnach's protrusion had decreased, not his pain level. Tr.

524.

The opinion of Dr. DeHaan should have been given more weight, i.e., that Marnach has "significant occupational limitations"; "capable of only working 20 hours per week". Tr. 409. Dr. DeHaan had been treating Marnach for chronic pain management since February of 2003. As set out on page 5 and 6 of this Order, Dr. DeHaan's opinion is consistent with the number of medications and the frequency of increasing or altering these medications to try to manage Marnach's pain level.

The Court is persuaded that record is consistent with Marnach's allegations of functional limitations.

## VI. CONCLUSION

The Court has carefully considered the arguments of the parties and closely examined the record and is persuaded that there is not substantial evidence in the record as a whole to support the decision made by the ALJ. This Court is persuaded that the ALJ erred in discrediting the testimony of the plaintiff and did not appropriately accept the treating physicians' opinions. Furthermore, the ALJ's hypothetical question did not accurately depict Marnach's impairments and

limitations as set out herein.

This Court understands that the ALJ is to make the credibility findings, but this Court is unable to find good reasons for the ALJ's refusal to credit Marnach's testimony regarding pain.  On the other hand, this Court was able to find substantial evidence to support Marnach's allegations of disabling pain, all as set out on pages 3-7 of this Order.

Based on the foregoing, this Court concludes that there is not substantial evidence in the record as a whole to support the ALJ's findings that Marnach is not disabled.  A review of the record as a whole supports the conclusion that Marnach was disabled and unable to work as of October 13, 2004.  This is the date that Marnach indicated that his pain patch was not working and Dr. Anand doubled the dosage, which demonstrates that Marnach's pain was not controllable and the pain was disabling.

Remanding this case for further proceedings would only delay Marnach's receipt of disability benefits (SSD) and supplemental security income benefits (SSI), therefore, "an immediate order granting benefits without remand is appropriate."  <u>Cline v. Sullivan</u>, 939 F.2d 560, 569 (8th Cir.

1991); Tennant v. Schweiker, 682 F.2d 707, 710 (8th Cir. 1982). Marnach clearly suffers from chronic back problems and pain. These conditions significantly impair his ability to function in the workplace. Judgment shall be entered reversing the ALJ's decision of denying such benefits.

**Upon the foregoing,**

**IT IS HEREBY ORDERED** that the decision of the ALJ is reversed, and the Commissioner is directed to compute and award disability benefits to Marnach with an onset date of October 13, 2004.

A timely application for attorney fees, pursuant to the Equal Access to Justice Act, 28 U.S.C. §2412 ("EAJA"), must be filed within thirty days of the entry of final judgment in this action. Thus, if this decision is not appealed, and Marnach's attorney wishes to apply for EAJA fees, he must do so within thirty days of the entry of the final judgment based on the Order in this case.

**IT IS SO ORDERED** this 4th day of October, 2006.

Donald E. O'Brien, Senior Judge
United States District Court
Northern District of Iowa